# EXHIBIT A

# REVISED SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS

**1.** *Parties*. The parties to this Agreement are Craig Burey ("Burey" or "Plaintiff" or "you"), on one hand, and SBP Staffing & Recruiting LLC ("SBP"), SB Port Ventures LLC ("SB Port"), and Nomi Health, Inc. ("Nomi") (collectively, SBP, SB Port, and Nomi are referred to as "Defendants"), on the other hand. On or about April 12, 2023, Burey filed a lawsuit in the U.S. District Court for the Southern District of Florida, titled *Craig Burey v. Nomi Health Inc., SBP Staffing and Recruiting LLC, SB Port Ventures LLC, and Trixie-Belo-Osagie*, Case No. 1:23-cv-21378-RAR (the "Lawsuit"), which alleged that Defendants had failed to pay Burey overtime under the Fair Labor Standards Act of 1938 ("FLSA").

Burey and Defendants are interested in avoiding all further legal costs and disputes, and in fully and expeditiously resolving the claims, charges, or issues of law or fact that were or could have been raised by Burey against Defendants in the Lawsuit, as of the date Burey signs this Agreement. This Revised Settlement Agreement and Release of Claims supersedes, controls, and renders the Settlement Agreement and Release of Claims (signed Oct. 4-9, 2023) as ineffective as a matter of law and fact.

**2.** *Consideration for Release of Claims*. Defendants agree to pay sixteen thousand seven hundred and fifty dollars ($16,750.00), which represents alleged overtime claimed by Burey of $3,882.26, liquidated damages to Burey of $3,882.26, separate consideration of $500.00 for non-wage provisions of this Agreement, and attorneys' fees and costs to FairLaw Firm of $8,485.48, as follows:

- SBP and SB Port shall pay Burey a total of $3,882.26, as non-employee compensation, in exchange for Burey's release of any claims for allegedly unpaid wages, including his claims under the FLSA. SBP and SB Port's receipt of an IRS Form W-9 completed and executed by Burey is a condition precedent to this payment. SBP and/or SB Port will issue an IRS Form 1099 to Burey reflecting this payment.

- SBP and SB Port shall pay Burey a total of $3,882.26, as non-employee compensation, in exchange for Burey's release of any claims for liquidated damages under the FLSA. SBP and SB Port's receipt of an IRS Form W-9 completed and executed by Burey is a condition precedent to this payment. SBP and/or SB Port will issue an IRS Form 1099 to Burey reflecting this payment.

- Nomi shall pay Burey $500.00, as non-employee compensation, in exchange for Burey's agreement to the confidentiality, nondisparagement, convent not to sue, release of non-wage claims, and other provisions contained in this Agreement. Nomi's receipt of an IRS Form W-9 completed and executed by Burey is a condition precedent to this payment. Nomi will issue an IRS Form 1099 to Burey reflecting this payment.

- SBP and SB Port shall pay FairLaw firm a total of $2,235.48 for attorneys' fees and costs. SBP and SB Port's receipt of an IRS Form W-9 completed and executed by

> FairLaw Firm is a condition precedent to this payment. SBP and/or SB Port will issue an IRS Form 1099 to FairLaw Firm reflecting this payment.
>
> - Nomi shall pay FairLaw firm a total of $6,250.00 for attorneys' fees and costs. Nomi's receipt of an IRS Form W-9 completed and executed by FairLaw Firm is a condition precedent to this payment. Nomi will issue an IRS Form 1099 to FairLaw Firm reflecting this payment.
>
> - Although the Defendants determined how to allocate the settlement payments amongst themselves, as set forth above, all Defendants are jointly and severally liable for the payments due to Burey and his counsel under this Agreement.

Defendants will report the payment(s) above to the IRS as required by law. Burey acknowledges that he has not relied on any statements or representations by Defendants or their attorneys with respect to the tax treatment of the payments described in this section. If any taxing body determines that the tax treatment was incorrect and that greater amounts should have been withheld from any payment above (or any part thereof), Burey acknowledges and assumes all responsibility for paying his share of those amounts and further agrees to indemnify and hold Defendants harmless for payment of his share of any additional taxes and any interest and penalties thereon.

Both parties warrant that they are not aware of any attorneys' liens placed on this matter.

Burey agrees that the payments above are consideration for the promises by Burey contained herein and that Defendants were not otherwise obligated to make these payments. The Parties further acknowledge that it is Defendants' position that Burey was not, at any time relevant to the claims asserted in the Lawsuit, an employee of Defendants, and that Defendants entering into this agreement does not constitute an admission of liability by any Defendant.

Defendants' obligations to make the payments above shall become due within 10 days after all of the following occur: (i) Defendants receive this Agreement executed by Burey; (ii) the Court approves this Agreement, upon joint motion of the Parties, and dismisses the Lawsuit with prejudice, in full, while retaining jurisdiction for enforcement; and (iii) Burey and his attorney(s) provide any completed tax forms identified above.

**3.** *Dismissal of the Lawsuit.* The parties agree that Burey causing the Lawsuit and claims to be dismissed with prejudice is a condition precedent to Defendants' promises in this Agreement. the parties agree to take any actions necessary to effectuate the dismissal with prejudice, upon the condition that the Court retain jurisdiction for enforcement. Burey understands and acknowledges that if any portion of the claims asserted by him in the Lawsuit are not dismissed with prejudice or proceeds in any respect, this Agreement shall have no force or effect, and Burey shall be entitled to no payments hereunder.

**4.** *Release of Claims.* In exchange for receipt of the consideration specified above, Burey releases Defendants, their respective parents, subsidiaries, affiliates, predecessors, successors, partnerships, investors, joint ventures, vendors, subcontractors, related entities, and all of Defendants' and the foregoing entities' past and present directors, officers, employees, attorneys, and anyone else acting by, through, for, under, or in concert with any of them (collectively, the "Releasees") from any and all claims, charges, complaints, actions, causes of action, suits,

2

grievances, controversies, disputes, demands, agreements, contracts, covenants, promises, liabilities, judgments, obligations, debts, damages (including, but not limited to, actual, compensatory, punitive, and liquidated damages), attorneys' fees, costs, and/or any other liabilities of any kind, nature, description, or character whatsoever that party may have against any or all of the Releasees arising out of his work or employment with any Releasee and/or any other fact, condition, circumstance, or occurrence whatsoever, up to and including the effective date of this Agreement, whether known or unknown, suspected, or concealed, and whether presently asserted or otherwise, including, but not limited to, all claims that any Releasee failed to pay any wages or other compensation or benefits including back pay, front pay, bonuses, commissions, equity, expenses, incentives, insurance, paid/unpaid leave/time off, profit sharing, salary, or separation pay/benefits.

The Parties acknowledge that they may later discover facts different from or in addition to those now known to them or believed by them to be true with respect to any or all of the matters covered by this Agreement, and the Parties agree that this Agreement nevertheless shall remain in full and complete force and effect.

**5.** *Release Exclusions.* The Release of Claims excludes the right to enforce this Agreement as well as any claims that cannot be waived by law. This includes any claim for unemployment or worker's compensation; any right to COBRA benefits or vested retirement benefits; and any existing rights of defense and indemnity or liability insurance coverage. Nothing in this Agreement limits Burey's right to file a claim, give information, or participate in an investigation or proceeding with a government agency such as the U.S. Securities and Exchange Commission (SEC), the Equal Employment Opportunity Commission (EEOC), or the Occupational Safety and Health Administration (OSHA) under any law protecting such rights. Burey gives up, however, the right to any money or other personal benefit from any Releasee (not a government agency) for any such claim or litigation, whether brought by Burey or on his behalf, unless prohibited by law.

**6.** *Court Approval.* The Parties will seek the Court's approval of the Agreement. They will take whatever measures are necessary to achieve settlement approval, to the fullest extent consistent with the Parties' mutual intent at the time they agreed upon a settlement.

**7.** *Promise Not To Sue*. A "promise not to sue" means Burey promises not to sue any Releasee in court. This is different from the Release above. Besides releasing claims covered by the above Release, Burey agrees never to sue any Releasee for any reason covered by the Release, subject to the Release Exclusions. Despite this Promise Not To Sue, however, Burey may file suit to enforce this Agreement. If Burey sues a Releasee in violation of this Agreement, he shall be required to pay that Releasee's reasonable attorney fees and other litigation costs incurred in defending against his suit.

**8.** *Confidentiality of Agreement*. This Agreement is strictly confidential. Other than as necessary to obtain Court approval of this Agreement, Burey will not communicate the fact of this Agreement, this Agreement's terms, or facts concerning any related discussions or filings to any third party, whether verbally or in writing, by any means, including by social media, whether directly or through any agent. Any disclosure by Burey or his agents will cause Defendants irreparable harm that money cannot undo. Accordingly, violation of this section will entitle Defendants to temporary and permanent injunctive relief. Except as required by law, neither Burey

nor his agents have not disclosed and will not disclose any term of this Agreement or any other settlement agreement entered into in connection with the Lawsuit, including any payment under this Agreement or any other settlement agreement entered into in connection with the Lawsuit, to anyone except his immediate family members and his legal/financial advisors. Each of them is bound by this Confidentiality of Agreement provision, and a disclosure by any of them is a disclosure by Burey. Except as relates to obtaining Court approval of the Agreement, the only comment that Burey or his legal counsel may make in response to an inquiry by a third party regarding the Lawsuit or this Agreement will be to say that "no dispute is pending." Burey further represents that, as of the date Burey executed this Agreement, he and his legal counsel have not disclosed the terms or fact of this settlement or any other settlement agreement entered into in connection with the Lawsuit to any individual, apart from through formal filings with the Court.

**9.   *Non-Disparagement*.** In exchange for the consideration specified above, Burey promises not to do or say anything, verbally or in writing, directly or indirectly, that disparages, reflects negatively on, or otherwise detrimentally affects Defendants or any Releasee. This non-disparagement provision explicitly prohibits posting disparaging comments, remarks, videos, or reviews on social media platforms, including but not limited to Glassdoor, Indeed, Facebook, Yelp, search engine reviews, or other social media, career, or messaging platforms. Burey agrees that, except to comply with a subpoena or Court order, he has not provided and will not provide testimony, written or orally, in connection with *Tasma Brighthaupt v. Nomi Health, Inc.*, Case No. 1:22-cv-24089-JEM (S.D. Fla.).

**10.   *Neutral Reference*.** SBP promises to provide Burey a neutral reference letter stating his name, position held, and dates worked, and without reference to any claim, lawsuit, or the resolution thereof.

**11.   *Non-Admission*.** Neither Defendants' offer reflected in this Agreement nor any payment under this Agreement is an admission that Burey has a viable claim against any Releasee. Each Releasee denies all liability. The Parties agree that, except as otherwise provided herein, they shall bear their own respective attorneys' fees and costs. Neither Burey nor Defendants shall be viewed as a prevailing party by virtue of executing this Agreement.

**12.   *Payment of Applicable Taxes*.** Burey is and shall be solely responsible for his share of all federal, state, and local taxes that he may owe by virtue of the receipt of any portion of the monetary payment provided under this Agreement. Burey agrees to indemnify and hold Defendants harmless from any and all liability, including, without limitation, all penalties, interest and other costs that may be imposed on him by the Internal Revenue Service or other governmental agencies regarding his share of any tax obligations that may arise from the monetary consideration made to Burey under this Agreement.

**13.   *Applicable Law*.** This Agreement shall be interpreted under federal law if that law governs, and otherwise under the laws of Florida, without regard to its choice of law provisions.

**14.   *Enforceability*.** If a court (or arbitrator) finds any part of this Agreement unenforceable, that part shall be modified and the rest enforced. If a court (or arbitrator) finds any such part incapable of being modified, it shall be severed and the rest enforced. A decision not to enforce this Agreement does not waive any future violation.

**15.** *Enforcement***.** If any party breaches this Agreement, the non-breaching party/parties shall be entitled to preliminary and permanent injunctive relief plus attorneys' fees incurred in enforcing this Agreement, unless otherwise expressly provided elsewhere in this Agreement, plus any additional relief determined to be appropriate.

**16.** *Counterparts***.** This Agreement may be executed in any number of counterparts and by different parties hereto in separate counterparts, with the same effect as if all parties had signed the same document. All such counterparts shall be deemed an original, shall be construed together, shall constitute one and the same instrument, and shall be considered confidential in accordance with the terms of this Agreement. A copy or .pdf version of this Agreement shall be considered the same as an original for all purposes.

**17.** *Non-Assignment*. Burey agrees that he has not and will not assign this Agreement, any part of this Agreement, or any rights arising under this Agreement, to any person or entity. Defendants further represent and warrant that, as of the effective date of this Agreement, the claims released under this Agreement have not been sold, assigned, or transferred, in whole or in part, to any other person or entity.

**18.** *Entire Agreement***.** This Agreement constitutes the entire, complete, and integrated statement of each and every term and provision agreed to by and between Burey and Defendants related to Burey's release of claims. This Agreement supersedes any prior representations, promises, or warranties (oral or otherwise) made by Burey or Defendants as to such claims, including the Settlement Agreement and Release of Claims, and neither Burey nor Defendants shall be liable or bound to any prior representation, promise, or warranty (oral or otherwise) as to the matters covered by this Agreement, unless expressly set forth herein. This Agreement shall not be modified or canceled in any respect, except as provided herein by a writing executed by Burey and Defendants.

**19.** *Other Representations***.** Burey agrees:

- He has received all pay, compensation, benefits, leave, and/or time off he is due to date, including for overtime or vacation/PTO, or will receive same through this Agreement;

- He has not suffered any on-the-job injury for which he has not already filed a claim, and the end of his work is not related to any such injury;

- The payments and other consideration provided in this Agreement are not related to sexual harassment or sexual abuse;

- He has had the opportunity to negotiate this Agreement with Defendants, and this Agreement shall not be construed for or against any party as a drafter of its terms;

- He was advised in writing, by getting a copy of this Agreement, to consult with an attorney before signing below; and

- He is signing this Agreement knowingly and voluntarily.

> READ THIS RELEASE CAREFULLY AND CONSIDER ALL OF ITS PROVISIONS BEFORE SIGNING IT: IT INCLUDES A RELEASE OF KNOWN AND UNKNOWN CLAIMS. IF YOU WISH, YOU SHOULD CONSULT AN ATTORNEY OR OTHER ADVISOR AT YOUR OWN EXPENSE.

By: *Craig Burey (Nov 1, 2023 11:12 EDT)*    Nov 1, 2023
     CRAIG BUREY    (Date)

By: *Trixie Belo-Osagie*
     SBP STAFFING AND RECRUITING LLC    (Date)
Name: Trixie Belo-Osagie
Title: CEO/President

By: *Trixie Belo-Osagie*
     SB PORT VENTURES LLC    (Date)
Name: Trixie Belo-Osagie
Title: CEO/President

By: _____
     NOMI HEALTH, INC.    (Date)
Name:
Title:

6

> READ THIS RELEASE CAREFULLY AND CONSIDER ALL OF ITS PROVISIONS BEFORE SIGNING IT: IT INCLUDES A RELEASE OF KNOWN AND UNKNOWN CLAIMS. IF YOU WISH, YOU SHOULD CONSULT AN ATTORNEY OR OTHER ADVISOR AT YOUR OWN EXPENSE.

By: _____    By: _____
    CRAIG BUREY    (Date)    SBP STAFFING AND RECRUITING LLC    (Date)

Name: _____

Title: _____

By: _____
    SB PORT VENTURES LLC    (Date)

Name: _____

Title: _____

By: *Debbie Giambruno*    11/1/2023
    NOMI HEALTH, INC.    (Date)

Name: Debbie Giambruno

Title: General Counsel